PHILIP E. QUINN *et al. vs.* MICHELE DE CURTIS *et al.*

APRIL 15, 1940.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CAPOTOSTO, J. This is an action of debt against the sureties on a bond given to the sheriff and his deputy to release an attachment. The original writ of attachment issued and

was served by the sheriff in an action brought by Luigi De Curtis against Ernesto Di Biasio, which action resulted in a judgment for the plaintiff. In the instant case, the defendants filed a special plea setting forth that they were discharged from their obligation as sureties on the attachment bond because the judgment creditor, Luigi De Curtis, for whose benefit the present case is brought, gave time to the principal debtor, Ernesto Di Biasio, without their consent. This case was tried before a justice of the superior court, sitting without a jury, who entered a decision for the plaintiffs in the sum of $317.15. The case is before us on the defendants' exception to this decision.

The parties are closely related. The defendant Michele De Curtis is the brother of Luigi De Curtis, the judgment creditor, and the father-in-law of the principal debtor, Ernesto Di Biasio. Gemma De Curtis, the other defendant here, is the wife of Michele De Curtis. Di Biasio and his wife lived with the defendants.

It appears in evidence that Di Biasio's place of business was attached under the writ in the original action. This attachment was released by a bond in the penal sum of $400, dated November 9, 1936, and signed by Ernesto Di Biasio as principal, and Michele and Gemma De Curtis as sureties. What happened between the execution of that bond and the institution of the present action gives rise to the controversy in this case.

The plaintiffs' case rests almost entirely on the testimony of the lawyer who in this whole matter acted as the attorney for Luigi De Curtis, the judgment creditor. He is the attorney representing the plaintiffs in the instant case and will be hereinafter referred to as their attorney. He testified that in April, 1937, Di Biasio came to his office for the purpose of making some adjustment of the De Curtis judgment, as Michele De Curtis, Di Biasio's father-in-law, did not want

to be sued on the attachment bond. To relieve an embarrassing situation, Di Biasio offered to give a mortgage on certain lots of land which he owned in the city of Cranston. This offer was taken under consideration by the plaintiffs' attorney, with the understanding that he would give a definite answer after an examination of the title and an appraisal of that property.

Apparently satisfied with his examination of the real estate in question, which showed a first mortgage to the Cranston Loan Company with a balance due of $1200 or $1300, the plaintiffs' attorney prepared an unconditional second mortgage securing the payment of a negotiable promissory note for $400, the same sum as the penal sum of the attachment bond, dated April 19, 1937, and payable to Luigi De Curtis or order eight months from that date, with interest at the yearly rate of eight per cent. The plaintiffs' attorney also testified that on said date Di Biasio and his wife willingly executed this second mortgage, they being informed by him at that time that such mortgage was taken for and in behalf of his client, Luigi De Curtis, "merely as additional security and not as extinguishment of the original judgment." He further testified: "I didn't have an arrangement with anybody to extend the time of the payment of the judgment."

The testimony of Di Biasio and his wife with reference to what occurred when they executed the mortgage is quite different. The substance of their testimony is that, being anxious to restore peace in their family, they executed the mortgage on the promise of the plaintiffs' attorney that Michele and Gemma De Curtis would be released from all liability as sureties on the attachment bond, and that the bond itself would be returned to them, which never was done.

They also testified that, before executing the mortgage, Di Biasio remonstrated against the principal sum fixed therein as being considerably in excess of the amount of the

judgment; and he further protested when, in addition to such excess, the attorney demanded the payment of fifty dollars before he would accept the mortgage and release the attachment bond. According to Di Biasio, the attorney's answer to these protests was: "Well, if you want to take out of the trouble the father-in-law that is what you have got to do"; and, according to Di Biasio's wife, he, addressing her husband, said: "If you want to release your father-in-law's bond, then you have to sign this note for $400."

The mortgage, mortgage note and a receipt for $50 were introduced in evidence. The plaintiffs' attorney explained the receipt as follows. "He (Di Biasio) gave me $50, $10 of which was to pay expenses of recording and drawing up the mortgage and for the expenses of a real estate man to appraise the lots and $40 was to be applied on the judgment." However, the negotiable mortgage note has the following entry endorsed thereon: "1937, April 19. Received of the Principal of the within note—$40.00."

Following the execution by Di Biasio of the second mortgage here involved, the Cranston Loan Company foreclosed its first mortgage on that property. When the foreclosure sale was held or what it brought does not appear in evidence. The record, however, shows that the action in the instant case was commenced by writ dated December 19, 1938, just eight months from the date of the above-described second mortgage.

With the exception of a short excerpt from the testimony of the plaintiffs' attorney, which we shall presently quote, no further reference to the evidence is necessary. No contention is made by the plaintiffs that the attorney acted without authority in the mortgage transaction; nor do they contend that the sureties on the attachment bond, the defendants in this case, consented or had knowledge of that transaction. Their sole contention is that there was no

agreement with Di Biasio, the principal on the bond, for an extension of time so as to discharge the sureties.

At the close of the case, the trial justice gave his decision from the bench in brief and general language. It was his opinion that the testimony preponderated in favor of the plaintiffs. He based this conclusion mainly upon the testimony of the plaintiffs' attorney and the fact that, being an attorney, he undoubtedly appreciated that an extension of time to the principal on the bond without the consent of the sureties would discharge the latter from their liability as such. No reference is made by him to the evidence in the case, nor does he cast any reflection upon the credibility of the witnesses for the defendants.

It is well established with us that the decision of a trial justice on conflicting evidence will not be disturbed unless clearly wrong. In the instant case, however, we cannot sustain his decision, as he did not give proper effect to certain admitted or clearly proven facts. In his redirect examination the plaintiffs' attorney testified as follows. "Q. Did you explain to Mr. Di Biasio the meaning of the taking that note and mortgage as additional security? A. Well, I don't know whether I explained it but I did tell him that unless he paid the amount of the note, or, rather, the amount of the judgment, within eight months, that I was going to proceed against his father-in-law."

In our opinion this testimony is of great importance. Furthermore, we have also the fact, above stated and proved by the testimony of this same attorney, that the judgment creditor accepted from this debtor as further security for the payment of the judgment debt, the debtor's promissory note for $400, *payable in eight months,* and a second mortgage on real estate of the debtor securing the payment of that note.

There is nothing to show that the present defendants, who are sureties on the bond, ever consented to any of this

conduct by the judgment creditor, which prevented them from paying the judgment debt and then at once exercising effectively their equitable right of subrogation, by proceeding at once against the judgment debtor and his property. Therefore, by this conduct of the judgment creditor, which was detrimental to their rights and remedies as sureties and to which they did not consent, these defendants were discharged from their obligations as sureties. See 21 R. C. L. 50, Principal and Surety; *Andrews* v. *Indemnity Ins. Co.,* 55 R. I. 341, 348; *Fales* v. *McDonald,* 32 R. I. 406, 411; *Wilson* v. *Fisk,* 22 R. I. 100.

The cases cited and relied upon by the plaintiffs are inapplicable in this case, because they are clearly distinguishable in their facts. For instance, they strongly urge upon us the decision of this court in *Thurston, Gardner & Co.* v. *James,* 6 R. I. 103. But when that case is carefully read, it gives no support to the plaintiffs' contention in the circumstances now before us.

For the reasons above stated, the defendants' exception to the decision of the trial justice is sustained.

The plaintiffs may, if they shall see fit, appear before this court on April 24, 1940, and show cause, if any they have, why the decision of the trial justice should not be reversed and judgment ordered entered for the defendants.

*Harold C. Arcaro, A. Anthony Susi,* for plaintiffs.

*George Ajootian, Henry R. Di Mascolo,* for defendants.